MEDINA & CLOHECY *v.* JOHN HANSON.

Carriers or watermen may be liable for the loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental or uncontrollable events.

APPEAL from the Second Judicial District Court of the Parish of Jefferson, *Cazabat*, J.

*N. Commandeur* for defendant.

*R. King Cutler for plaintiffs and appellants.*—Plaintiffs claim four hundred and eleven dollars damages, caused by the carelessness and negligence of the defendant, as a common carrier, by taking into his charge and towing, with his steam job-boat Downs, a lot of ship timber from Battle Ground Flats, below the city, to Algiers.   The defendant, after denying the allegations of plaintiffs' petition, claims in reconvention the sum of five hundred dollars, for four days loss of time of his boat and crew, and the loss of rope, and the sustenance of the crew.   The judgment of the court *a quo* was in favor of defendant and against plaintiff, for thirty-four dollars, on the plea in reconvention.

The first question presented by the facts of this case is, whether the defendant was a common carrier.   By reference to 1 La. Rep. p. 350, in the case of *Smith* v. *Pearce*, we find "that the owners of steam towboats are liable as common carries;" and that the court were unanimously of the opinion "that the situation of proprietors of towboats, and the business they undertake, cannot legally authorize a relaxation of the severity and rigor of the rules applicable to common carriers."   This opinion is confirmed in the case of *Davis* v. *Houren*, in 6 Rob. Rep. p. 255; and again in the case of *Millaudon* v. *Martin*, 6 Rob. p. 534.   In fact, the elementary law is clear upon this question: for, it would seem, that the only interpretation that could be given to Articles from 2722 to 2726 of the Civil Code, is, that owners of steam towboats are liable as common carriers.   These authorities clearly establishing the liability of the owners

of steam tow boats as common carriers, we will next consider their liability. By reference to Jones on Bailments, Appendix, pp. 17, 18, 19 and 20, we find : "By the custom of the realm, a carrier is responsible for events which are independent of his contract, and is liable for losses, whether arising from accident, robbery, irresistible force, or any other means whatever, except they arise from the act of God or from the king's enemies." "A carrier is in the nature of an insurer, and is liable for every accident, except by the act of God or the king's enemies." "The act of God means something in opposition to the act of man, for everything is the act of God that happens by his permission, everything by his knowledge." "But to prevent litigation, collusion and the necessity of going into circumstances impossible to be unravelled, the law presumes against the carrier, unless he shows it was done by the king's enemies, or by such act as could not happen by the intervention of man." As to whom the burthen of proof rests upon, the same authority continues thus : "If a loss happens, the *onus probandi* lies on the carrier to exempt him from liability; and it is not enough for him to prove where the goods are carried by water, that the navigation is attended with so much danger that a loss may happen, notwithstanding the utmost endeavors of the watermen and crew to prevent it; that the person conducting the boat possesses competent skill and due diligence, and provided hands of sufficient strength and experience to assist him." We find this doctrine laid down in the Civil Code, Arts. 2722 to 2726, inclusive, and sanctioned by this court in the case of *Holland* v. *Cammett*, in 5 An. p. 705, as well as in numerous other decisions which we deem it unnecessary to refer to.

The testimony of *John McBride*, that of *T. R. Brady, Captain John H. Brown, Captain Jacob Joachim*, as well, in fact, as the principal witnesses on the part of the defence, thoroughly and clearly proves and establishes the contract between the plaintiff and defendant; and that defendant was to carry, or tow, with his steam towboat Downs, the ship timber, mentioned in the plaintiffs' petition, from the Battle Ground Flats, eight or ten miles below the city of New Orleans, to Algiers, the place of its destination; and further, that the defendant went with his tow boat Downs to the Battle Ground Flats, where the timber was situated, and there took possession of it, fastened it to his boat, commenced the carrying of it by loading a part of it into an empty flatboat, brought there for that purpose by the defendant; with his towboat Downs. The same witnesses establish that the same evening on which they commenced the loading of the timber, more particularly about bedtime of that night, the weather was clear and calm, although it had been blowing quite hard a day or two previous, and did blow very hard a few days afterwards. That, during the night, a wind arose, and the steamboat, flatboat and timber, all got adrift in the Mississippi river; and the ship timber, staples, ropes, etc., mentioned in plaintiffs' petition, were entirely lost. Further, the same testimony proves conclusively that John Hanson, the defendant, who was the owner of the boat, and who then acted as commander and captain, he having the entire control, was, and he is, a very incompetent boatman ; and, further, that the boats and timber were improperly moored and fastened, they being tied to old

MEDINA ET AL.
v.
HANSON.

drift logs on the shore, with old and unsound ropes, which leads us to the irresistible conclusion that there was no one on watch that night, and that the loss happened in consequence of the reckless carelessness, imprudence, want of skill and mismanagement on the part of the defendant, and that the loss cannot be attributed to an act of God. The testimony introduced by the defendant is an attempt, first, to discredit some of the witnesses of plaintiffs'; second, to establish that the river at the Battle Ground Flats was difficult of navigation; and, thirdly, that Captain Hanson did all he could to save the timber.

According to the principles heretofore laid down, from Jones on Bailments and the decisions of this court, even if the defendant had succeeded in establishing his second and third grounds of defence, it could have availed him nothing as a defence to this suit; for we contend that it was incumbent on him, not to prove that he acted with due diligence and as a prudent master of a vessel would act under similar circumstances, but it was his imperative duty to show that the loss occurred from an overpowering act of God. The error fallen into by the learned judge below, was in considering his second ground of defence a bar to this action; for, in his reasons for judgment, he says : "That Captain John Hanson, the defendant, seems to have taken all the precaution for the safety of his towboat, as well as of plaintiffs' timber and flatboat, and that the accident by which some of the timber was lost cannot be attributed to him ;" which clearly shows that to him it was sufficient for the defendant to establish due diligence on his part, and that it was not necessary for the defendant to prove that the loss occurred from an act of God ; which opinion, as is apparent, conflicts with the law and settled jurisprudence of this State. Admitting the foregoing facts, all of which are fully presented by the testimony in the record, nothing can be more certain than that the defendant is legally liable to plaintiff for the value of his property lost on this occasion. The Civil Code alone fixes his liability. Article 2723 reads : " They are answerable, not only for what they have actually received in their vessels, but also for what has been delivered to them at the port or place of deposit, to be placed in the vessel or carriage." Again, Article 2725, reads : " Carriers and watermen may be liable for the loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accident and uncontrollable events." These articles have been frequently considered by this court, and it may be correctly said that the question is no longer an open one, for the uniform jurisprudence of the State, as settled by this court, is " that the common carrier, under the commercial law, is answerable for all losses that do not fall within the excepted cases of the act of God," (perils of the seas.) Among other authorities on this subject, we refer your honors to the case of Thomas v. Ship Morning Glory, 13 An. p. 269; the case of Logan v. The Pontchartrain Railroad Company, 11 Rob. p. 24; and to the case of Rochereau & Co. v. Barque Hansa, 14 An. p. 431.

LABAUVE, J. The plaintiffs and appellants claim of the defendant the sum of $411, with interest. They allege, in substance, that in January, 1860, they had contracted to deliver to James Martin, at the Atlantic dry dock, at Algiers, a certain quantity of white oak (ship timber), from

thirty-five to forty pieces ; of which twenty-one pieces were then some   MEDINA ET AL.
eight miles below Algiers, lying in the Mississippi river ; that said Han-   HANSON.
son agreed to tow the said twenty-one pieces of timber from where they
were to said dry dock, and proceeded down the river with his job-boat
Downs, to where the timber was, but concluded that said timber could
not be towed up then, in the condition it was then in; and petitioners pur-
chased a flatboat, which they delivered to said Hanson to convey the said
timber ; that said Hanson went back and commenced placing in said flat-
boat the said timber; and, having put in seven pieces, night came, and
the labor was suspended until next morning; but, that said Hanson fas-
tened the boat in so bad a manner that she broke loose in the night and
floated down, with said flatboat and timber attached to her, and that the
fourteen pieces, which had not been put in said flatboat, were lost ; that
this loss was caused by the carelessness and negligence of said Hanson,
etc., and he prays accordingly.

The defendant answered by a general denial, but admitted the under-
taking ; denied, at the same time, the neglect imputed to him ; that the
loss was caused by an unforeseen storm. He claims in reconvention $500,
for which he prays judgment.

The District court dismissed plaintiffs' demand, and gave judgment for
defendant in reconvention, for $34 and costs.

We find in the record a bill of exceptions, taken by plaintiffs ; but, as
a decision upon it would not change the conclusion we have come to, we
have not thought necessary to pass upon it.

The testimony shows that the weather was fine in the commencement
of the night; that the steamboat had two anchors out (one at each end),
and a line ashore, tied to an old log; there was nothing else to tie it to.
The flatboat was properly fastened. In the night a storm came on; every-
thing got loose—steamboat, flatboat and timber. The timbers that were
not put on the flatboat were lost.

It is true that steamboats are common carriers, and, as such, are held
to the most strict vigilance and responsibility. They must deliver what
they have received, unless they prove that the loss has been occasioned by
*accidental and uncontrollable events.* C. C. Art. 2725.

The loss of the timber is proven, as alleged ; it was then incumbent on
the defendant to show the accidental and uncontrollable event which had
caused the loss. He has done so by proving a storm which put every-
thing adrift in the river. But it is contended that he had been neglect-
ful in not securing properly his steamboat, the flatboat and the timber.
We have carefully examined the testimony, and we think, with the dis-
trict judge, that the defendant is not responsible. We are of opinion that
the judgment appealed from is erroneous in allowing the defendant thirty-
four dollars in reconvention against the plaintiff. We believe that de-
fendant has failed to make out his demand in reconvention.

It is therefore ordered and decreed, that the judgment of the District
court be annulled and avoided ; it is further ordered and decreed, that
there be judgment against plaintiff, and that there be also a judgment
against the defendant on his reconventional demand. It is further order-
ed and decreed, that plaintiff pay costs incurred in the District court, and
that the defendant pay those of appeal.